

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| GENERAL PARTS, INC. | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §   CIVIL ACTION NO. 1:08-cv-0313-SS |
| | § |
| INTERNET AUTOPARTS, INC., | § |
| | § |
| Defendant, | § |
| | § |
| v. | § |
| | § |
| O. TEMPLE SLOAN, JR., | § |
| | § |
| Third-Party Defendant. | § |

### INTERNET AUTOPARTS, INC.'S THIRD-PARTY COMPLAINT

Defendant/Third-Party Plaintiff Internet AutoParts, Inc. ("IAP") complains of Third-Party Defendant O. Temple Sloan, Jr. as follows:

### I. PARTIES

1. IAP is a Delaware corporation with its principal place of business in Texas.

2. Third-Party Defendant O. Temple Sloan, Jr. ("Sloan") is an individual who resides in North Carolina.

### II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. section 1332 because IAP and Sloan are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Sloan is a nonresident who conducts business in Texas, but has not designated or maintained an agent for service of process in Texas. Sloan does not maintain a regular place of

business in Texas, but he has purposely availed himself of the privilege of conducting activities in Texas. This lawsuit arises from Sloan's business activities in and/or directed toward Texas.

5. Sloan is an officer and director of GPI, and he has been a director of IAP since 2000.

6. Sloan has had continued and systematic contacts in Texas through his actions as a director for IAP, as well as other personal contacts. IAP generally holds quarterly board of directors meetings in Texas, and Sloan has attended certain of those meetings in person in Texas and participated telephonically in his individual capacity on a regular and systematic basis in other board meetings originating from Texas. The IAP board of directors has also held special meetings in which Sloan has participated in his individual capacity.

7. On numerous occasions beginning as early as 2000 and continuing to 2009, Sloan conducted business with Texas residents. In conducting this business, Sloan initiated and received telephone calls with individuals and corporations in Texas, and corresponded via mail, facsimile, and electronic mail with individuals in Texas. Sloan has also traveled to Texas on business and personal matters.

8. As a director of IAP, Sloan committed an intentional tort, the effect of which was foreseeable and was felt in Texas. Specifically, and as set forth in more detail below, Sloan breached his fiduciary duties to IAP and knew that his intentional conduct would cause extreme harm to IAP in Texas.

9. Sloan's acts constitute doing business in Texas pursuant to Texas Civil Practice and Remedies Code section 17.042.

10. Pursuant to Federal Rule of Civil Procedure 4(e) and Texas Civil Practice and Remedies Code section 17.044(b), Sloan may be served with process by serving his deemed

agent for service of process in Texas, the Texas Secretary of State, by certified mail, return receipt requested. The Texas Secretary of State should serve process, by certified mail, return receipt requested, upon Sloan at his home office address as follows: O. Temple Sloan, Jr., CEO, General Parts, Inc., 2635 E. Millbrook Road, Raleigh, North Carolina 27604.

11. Venue of these third-party claims is proper pursuant to 28 U.S.C. section 1391(a) because a substantial part of the events giving rise to this claim occurred in this district.

### III. FACTUAL BACKGROUND

12. On or about May 31, 2000, IAP, General Parts, Inc. ("GPI"), and others formed IAP and entered into a written Stockholders Agreement (the "Agreement"). IAP was formed to provide services to facilitate the sale of new and rebuilt automotive parts over the internet to the automotive service and repair market. *See* Exhibit A to Plaintiff's Original Complaint.

13. GPI is an automotive parts distributor.

14. The Agreement requires, among other things, that IAP's stockholders, such as GPI, exclusively use IAP to facilitate their internet sales of new and rebuilt automotive parts through November 26, 2011, the term of the Agreement. *See* Exhibit A to Plaintiff's Original Complaint, arts. 6.1, 7.1. The Agreement further requires IAP's stockholders, including GPI, to convert any competing business they acquire to IAP's products and services within 180 days of the acquisition. *See* Exhibit A to Plaintiff's Original Complaint, art. 6.1.

15. Pursuant to Article 6.1 of the Agreement, GPI agreed to not "directly own or indirectly own, manage, operate, control or participate in the ownership, management, operation or control of any business, whether in corporate, proprietorship or partnership form or otherwise, that is engaged, in the business of selling new or rebuilt automotive parts ... over the Internet to service dealers or brokering consumer vehicle repairs to automobile repair service providers." *Id.* GPI further agreed to "use commercially reasonable efforts to persuade its jobber customers

to sell automotive parts and accessories through the [IAP] marketplace." *Id.*

16. In return for IAP's promise to provide GPI access to IAP's electronic commerce stores, GPI promised to submit payments "in an amount between 1% and 2% of the gross proceeds of all sales transactions made ... through the electronic commerce stores." *Id.* These percentages are subject to change and, in fact, have been changed over time.

17. In 2001, IAP began selling automotive parts to customers in Texas and elsewhere over the internet through IAP's electronic stores for automotive parts distributors, such as GPI.

18. Sloan is the Chairman of the Board and Chief Executive Officer of GPI, and Sloan signed the Agreement on behalf of GPI as its Chairman. *See* Exhibit A to Plaintiff's Original Complaint.

19. Sloan has also been a director of IAP since its formation. As such, Sloan owes fiduciary duties to IAP. Indeed, Article 2.2 of the Agreement provides that "[n]othing in [the] Agreement, express or implied, shall relieve any officer or director of [IAP] ... of any fiduciary or other duties or obligations they may have to [IAP]." *See* Exhibit A to Plaintiff's Original Complaint, art. 2.2.

20. In February 2004, GPI acquired Automotive Communications Link, Inc. ("ACL"). ACL is a direct competitor of IAP, as ACL too facilitates the online sale of automotive parts, supplies, and tools to the automotive service and repair market.

21. GPI did not convert the ACL systems to IAP's products and services within 180 days of its acquisition of ACL, as GPI was required to do under the Agreement, and GPI has never switched ACL to IAP's products and services.

22. In October 2005, Sloan attended an IAP board meeting in Las Vegas, Nevada. At that meeting, Sloan informed IAP that GPI would no longer be using IAP to facilitate GPI's

internet sales of automotive parts. Recognizing GPI's obligations to exclusively use IAP's products and services to facilitate internet sales of new and rebuilt automotive parts through the term of the Agreement, Sloan informed IAP that GPI nevertheless would honor its payment obligations under the Agreement, and GPI would continue to pay IAP the required percentage of GPI's internet sales.

23. IAP relied upon Sloan's statements that GPI would honor its payment obligations under the Agreement and that Sloan would act in good faith.

24. Between March and June of 2006, GPI started moving its internet sales traffic to ACL and stopped using IAP's electronic stores to facilitate most of GPI's internet sales of automotive parts.

25. GPI admits that it no longer uses IAP to facilitate most of its internet sales. Instead, GPI conducts sales through its own internet capabilities, that is, GPI admits that it uses ACL to conduct the sales that were previously conducted by IAP. *See* Plaintiff's Complaint at ¶ 12. Thus, GPI has diverted its internet sales of new and rebuilt automotive parts away from IAP to ACL.

26. For a short time, GPI honored its obligations under the Agreement and kept Sloan's word by continuing to pay IAP for internet sales. GPI paid IAP from June 2006 through May 2007, even though GPI's internet sales were not made directly through IAP's electronic stores during that time. Through and until approximately September 2007, GPI provided IAP with GPI's internet sales transaction data on a monthly basis, and that transaction data provided the basis for IAP to calculate the amount GPI owed IAP for its services.

27. Contrary to its obligations under the Agreement and to Sloan's word, GPI last paid IAP the required percentage of GPI's internet sales in July 2007, when GPI paid the April

and May 2007 invoices. GPI frequently paid its invoices a month or two after the invoices were sent. GPI did not cease sending IAP transaction data until after September 2007. It was not until this time, at the earliest, that IAP became aware of Sloan's true intentions.

28. Upon information and belief, Sloan, acting as an interested GPI director and in contravention of his fiduciary duties to IAP, actively participated in GPI's decisions to acquire ACL, to not switch ACL to IAP's products and services, to stop using IAP in favor of ACL, and to stop paying IAP the required percentage of GPI's internet sales. Upon further information and belief, Sloan directed, controlled, and/or dominated GPI board members and officers in their actions related to these decisions.

29. Upon information and belief, Sloan sought to further financially weaken IAP so that it would not have the wherewithal to fight GPI's actions. Acting as a director of IAP and only shortly before GPI initiated this lawsuit, Sloan moved IAP's Board to distribute $1 million to IAP's stockholders, including to GPI. Upon information and belief and without informing the other members of IAP's Board that GPI was about to commence this suit against IAP, Sloan sought to have IAP make this distribution to hinder IAP's ability to pay the legal expenses associated with defending against GPI's claims and prosecuting IAP's own claims.

30. Before making this motion to distribute $1 million to IAP's stockholders, Sloan should have made full disclosure to IAP's other directors of GPI's intent to sue IAP and/or Sloan should have abstained from the vote to disburse the $1 million.

31. Through his actions and omissions, Sloan has usurped opportunities belonging to IAP and diverted those opportunities to GPI and/or its affiliates, including ACL. By breaching his fiduciary duties to IAP, Sloan has caused IAP to suffer significant economic losses and critically hindered IAP's ability to grow and to further develop its products, services, and market.

## IV. BREACH OF FIDUCIARY DUTY

32. IAP incorporates the foregoing factual allegations herein by reference.

33. As a director of IAP, Sloan owed duties of loyalty and good faith to IAP.

34. Upon information and belief, Sloan breached his fiduciary duties to IAP when he, acting as an interested GPI director and in contravention of his fiduciary duties to IAP, actively participated in GPI's decisions to acquire ACL, to not convert ACL to IAP's products and services, to stop using IAP in favor of ACL, and to stop paying IAP the required percentage of GPI's internet sales. Through these actions and omissions, Sloan usurped opportunities belonging to IAP and diverted those opportunities to GPI and/or its affiliates, including ACL.

35. Sloan also breached his fiduciary duties to IAP when, acting as a director of IAP, Sloan moved IAP's Board to distribute $1 million shortly before GPI initiated this suit. Upon information and belief, Sloan sought to have IAP make this distribution to place IAP in a position of weakness and hinder IAP's ability to pay the costs of this litigation.

36. As a result of Sloan's breaches of his fiduciary duties of loyalty and good faith, IAP has suffered millions of dollars in damages, including the profits it has lost from GPI's internet sales.

37. Sloan breached his fiduciary duties intentionally and with full knowledge that his outrageous actions would seriously damage IAP, or at least acted with reckless indifference to the rights of IAP. Sloan also acted with conscious indifference to the foreseeable effect of his conduct. Accordingly, IAP is also entitled to punitive damages in an amount to be determined by the trier of fact.

## V. REQUEST FOR RELIEF

Based on the foregoing, IAP respectfully requests that a summons issue and that upon trial, the Court issue a final judgment against Sloan and award IAP damages, prejudgment and

post-judgment interest at the highest rates allowed by law, and punitive damages. IAP also asks for such other and further relief to which it is entitled.

                                  Respectfully submitted,

                                By:  /s/ Scott L. Davis
                                        Scott L. Davis
                                        Attorney-In-Charge
                                        Texas Bar No. 05547030
                                        sdavis@gardere.com
                                        Matthew J. Schroeder
                                        Texas Bar No. 00791619
                                        mschroeder@gardere.com
                                        Jeremy Williams
                                        Texas Bar No. 24037714
                                        jwilliams@gardere.com
                                        GARDERE WYNNE SEWELL LLP
                                        3000 Thanksgiving Tower
                                        1601 Elm Street
                                        Dallas, Texas 75201
                                        (214) 999-3000 (Telephone)
                                        (214) 999-4667 (Facsimile)

                                ATTORNEYS FOR DEFENDANT AND COUNTERCLAIMANT INTERNET AUTOPARTS, INC.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document has been served, by ECF, upon counsel of record on _____, 2009:

Werner A. Powers
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Werner.Powers@haynesboone.com

Leslie C. Thorne
Haynes and Boone, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Leslie.Thorne@haynesboone.com

/s/ Scott L. Davis
Scott L. Davis